IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

HOPE FOR CAR OWNERS, LLC, and PATRICK FREEMAN,

Defendants.

2:12-cv-00778-GEB-EFB

ORDER

Plaintiff, the Federal Trade Commission ("FTC"), filed a motion "under Section 13(b) of the [Federal Trade Commission Act ('FTC Act')], 15 U.S.C. § 53(b), [in which it seeks] issuance of a temporary restraining order ('TRO') with an order to show cause why a preliminary injunction should not issue." (Pl.'s Mot. 1:22-25.) The motion was scheduled for hearing on April 2, 2012, and Defendants were provided a time by which any opposition to the motion was to be filed. However, this hearing date was vacated since Plaintiff failed to file any document showing Plaintiff's efforts to serve Defendants with the motion documents and did not explain whether it gave Defendants notice of the motion, hearing date, and opportunity to respond to the motion. Plaintiff responded by filing its counsel's declaration, in which counsel explained Plaintiff's efforts to notify Defendants of the motion, and requested that the Court reconsider its decision vacating

the hearing date. The Court then issued an order scheduling Plaintiff's motion on April 4, 2012, commencing at 11:00 a.m.; the order also provided Defendants an opportunity to file a written response to the motion.

Defendant Patrick Freeman, proceeding pro se, filed an opposition to the motion on April 2, 2012, on behalf of both Defendants. However, "[a] corporation may appear in federal court only through licensed counsel." United States v. High Country Broad Co., 3 F.3d 1244, 1245 (9th Cir. 2010). Therefore, Defendant's opposition with respect to Defendant Hope for Car Owners is stricken. Employee Painters' Trust v. Ethan Enters., Inc., 480 F.3d 993, 998 (9th Cir. 2007) (indicating when a corporation fails to retain counsel it risks losing a case by default judgment).

Defendant argues "Plaintiff's request should be denied due to the fact that Defendants, as of sometime during the first quarter of 2011 have ceased any and all marketing, advertising, [and] solicitation via the website www.carloanmod.com." (Def.'s Opp'n 2:5-8.) Concerning the website www.avoidrepo.org, Defendant argues "while it is accurate that Defendant paid for the domain registration, defendant does not now nor have they ever had electronic control of the information contained at the url and a recent review of the site shows details for a company that is in no way associated with the Defendants activities." Id. 4:6-10.

Defendant also contends the website www.carloanmod.com has been removed, the decision was made to dissolve the corporation, and both Defendants will likely file for bankruptcy. Id. 3:1-2, 3:18-19, 4:1-4. Further, Defendants argue as follows:

> Pursuant to Defendants['] decision to wind up operations and dissolve the corporation[,] all

> physical client records have recently been shredded and recycled. All electronic materials such as any computers, printers, drives, monitors, or any other materials used in conjunction with the Defendants efforts have recently been donated and/or sold to repay the outstanding debts of Hope for Car Owners.

Id. 4:22-5:2.

The motion is based upon Plaintiff's complaint in which it alleges Defendants violated Section 5(a) of the FTC Act, which "prohibits, *inter alia*, unfair or deceptive practices in or affecting commerce. An act or practice is deceptive if first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material." F.T.C. v. Stefanchik, 559 F.3d 924, 928 (9th Cir. 2009) (internal quotations and citation marks omitted). Specifically, Plaintiff alleges Defendants misrepresented that they would obtain auto loan modifications for their customers and that they would grant full refunds if their loan-modification efforts were unsuccessful. (Complaint ¶¶ 25-30.)

Section 13(b) prescribes:

> Whenever the Commission has reason to believe-
>
> (1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and
>
> (2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public--
>
> the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's

> likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond . . . *Provided further*, That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction.

15 U.S.C. § 53(b) (emphasis added). "Section 13(b), therefore, places a lighter burden on the Commission than that imposed on private litigants by the traditional equity standard; the Commission need not show irreparable harm to obtain a preliminary injunction. Under this more lenient standard, a court must 1) determine the likelihood that the Commission will ultimately succeed on the merits and 2) balance the equities." F.T.C. v. Affordable Media, 179 F.3d 1228, 1233 (9th Cir. 1999) (internal quotation marks and citations omitted).

"Individuals are personally liable for restitution for corporate misconduct if they had knowledge that the corporation or one of its agents engaged in dishonest or fraudulent conduct, that the misrepresentations were the type upon which a reasonable and prudent person would rely, and that consumer injury resulted." Id. at 1234. "The knowledge requirement can be satisfied by showing that the individuals had actual knowledge of material misrepresentations, were recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth." Id.

Plaintiff argues it will ultimately succeed on the merits of its claims against both Defendants and provides documents in support of the following arguments:

> Defendants represent that they will obtain an auto loan modification that will reduce consumers' monthly payments between 30% and 50%. Defendants make this representation on their website, and then reinforce the claim in their telephone sales pitches. . . .

> Although Defendants promise refunds, in fact they routinely deny their clients' requests for refunds. . . .
>
> Bank documents suggest that Defendants have taken in gross revenue of at least $370,378 between March 20, 2009 and October 31, 2011. In a letter to the Better Business Bureau of Northeast California in January 2011, Defendant Freeman wrote 'to date, we have assisted more than 13,000 [consumers]. Thus, the actual consumer injury could be much higher.

(Pl.'s Mot. 4:3-5, 11:17-18, 12:14-18 (internal citations omitted).)

Regarding Freeman's involvement, Plaintiff argues as follows and provides documents supporting these contentions:

> Defendant Patrick Freeman is the sole manager of HCO and its registered agent. He also has signatory authority over its bank accounts. Freeman is the registrant as well as administrative contact, technical, and billing contact for HCO's Internet websites. The domain registration and hosting fees for HCO's Internet website are paid for with Freeman's personal credit card. In additional Freeman responds on behalf of HCO to Better Business Bureau ("BBB") complaints against it and sends emails to consumers.

Id. 2:25-3:5 (internal citations omitted). Defendant does not respond to these arguments. Plaintiffs have shown that it is likely to prevail on its claims that Defendants have engaged, and are likely to continue to engage, in acts or practices that violate Section 5.

Concerning balancing the equities, "when a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight." F.T.C. v. Affordable Media, 179 F.3d 1228, 1236 (9th Cir. 1999). Further, under the Section 13(b) standard,"[h]arm to the public interest is presumed." F.T.C. v. World Wide Factors, Ltd., 882 F.2d 344, 346 (9th Cir. 1989). Plaintiff argues as follows:

> The public interest in halting Defendants'

> misrepresentations and deceptive claims about their vehicle loan modification services far outweighs any interest Defendants may have in continuing to deceptively market their services. . . . Granting such relief is also necessary because Defendants' conduct indicates that they will likely continue to deceive the public. . . . In contrast, the private equities in this case are not compelling. Compliance with the law is hardly an unreasonable burden. . . . Because the injunction will preclude only harmful, illegal behavior, the public equities supporting the proposed injunctive relief outweigh any burden imposed by such relief on Defendants.

(Pl.'s Mot. 20:12-21:15.) Defendant Freeman rejoins, arguing Defendants "have ceased any and all marketing, advertising, [and] solicitation via the website www.carloanmod.com." (Def.'s Opp'n 2:6-8.) However, since Defendant has not provided any sworn evidence supporting this argument and the FTC has provided evidence showing hardship to the public interest, the balance of equities favors granting the TRO.

Therefore, balancing the equities and considering the FTC's likelihood of success on the merits, the entry of this TRO is in the public interest.

**DEFINITIONS OF TERMS USED IN ORDER WHICH FOLLOWS**

1. "Assisting others" includes, but is not limited to, providing any of the following goods or services to another person:
   A. performing customer service functions, including, but not limited to, receiving or responding to consumer complaints;
   B. formulating or providing, or arranging for the formulation or provision of, any telephone sales script or any other marketing material, including but not limited to, the text of any Internet website, email, or other electronic communication;
   C. providing names of, or assisting in the generation of,

potential customers;

D.   performing marketing services of any kind; or

E.   acting or serving as an owner, officer, director, manager, or principal of any entity.

2.   "Defendants" means the Individual Defendant and the Corporate Defendant, individually, collectively, or in any combination. "Corporate Defendant" means Hope for Car Owners, LLC, and its successors and assigns.  "Individual Defendant" means Patrick Freeman.

3.   "Document" is equal in scope and synonymous in meaning to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and any other data compilations from which information can be obtained.  A draft or non-identical copy is a separate document within the meaning of the term.

4.   "Motor vehicle" means (a) any self-propelled vehicle designed for transporting persons or property on a street, highway, or other road; (b) recreational boats and marine equipment; (c) motorcycles; (d) motor homes, recreational vehicle trailers, and slide-in campers; and (e) other vehicles that are titled and sold through dealers.

5.   "Motor vehicle loan" means any loan secured by title to a motor vehicle or otherwise secured by the motor vehicle as collateral.

6.   "Motor vehicle loan assistance relief product or service" means any product, service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

A.    stopping, preventing, or postponing any repossession of the consumer's motor vehicle, or otherwise saving the consumer's motor vehicle from repossession;

B.    negotiating, obtaining, or arranging a modification of any term of a motor vehicle loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;

C.    obtaining any forbearance or modification in the timing of payments from any motor vehicle loan holder or servicer on any motor vehicle loan;

D.    negotiating, obtaining, or arranging any extension of the period of time within which the consumer may (i) cure his or her default on a motor vehicle loan, (ii) reinstate his or her motor vehicle loan, (iii) redeem a motor vehicle, or (iv) exercise any right to reinstate a motor vehicle loan or redeem a motor vehicle;

E.    obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any motor vehicle; or

F.    negotiating, obtaining, or arranging a sale of a motor vehicle or any other disposition of a motor vehicle loan other than a sale to a third party that is not the motor vehicle loan holder.

The foregoing shall include any manner of claimed assistance, including, but not limited to, auditing or examining a consumer's motor vehicle loan application.

7.    "Person" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship,

association, cooperative, or any other group or combination acting as an entity.

**ORDER**

**PROHIBITED REPRESENTATIONS**

**I. IT IS THEREFORE ORDERED** that Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any motor vehicle loan assistance relief product or service, are hereby temporarily restrained and enjoined from:

A. Misrepresenting, or from assisting others who are misrepresenting, expressly or by implication, any of the following:

1. That any Defendant or any other person generally will obtain for consumers a renegotiation, settlement, modification, or other alteration of the terms of any motor vehicle loan that will make consumers' payments substantially more affordable;

2. The degree of success that any Defendant or any other person has had in performing any motor vehicle loan assistance relief product or service;

3 The nature of any Defendant's or any other person's relationship with any motor vehicle loan holder or servicer, or other secured or unsecured lender;

4.  The amount of time it will take or is likely to take to obtain or arrange a renegotiation, settlement, modification, or other alteration of the terms of any motor vehicle loan; or

5.  The refund policy of any Defendant or any other person, including but not limited to the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer; or

B.  Representing, or assisting others who are representing, expressly or by implication, any degree or rate of success that any Defendant or any other person has had in performing any motor vehicle loan assistance relief product or service, unless, at the time of making the representation, Defendants have a reasonable basis supporting such a representation.

**RESTRICTION ON COLLECTION OF ADVANCE FEES**

**II.  IT IS FURTHER ORDERED** that Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any motor vehicle loan assistance relief product or service, are hereby temporarily restrained and enjoined from requesting or accepting payment of any fee or consideration in advance of performing each and every motor vehicle loan assistance relief product or service

that Defendants contracted to perform or represented would be performed.

**DISABLEMENT OF WEB SITES**

**III. IT IS FURTHER ORDERED** that, immediately upon service of the Order upon them and pending determination of the FTC's request for a preliminary injunction, (1) any person hosting any Internet website for, or on behalf of, any Defendant, and (2) Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, shall:

A. Immediately do whatever is necessary to ensure that any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any motor vehicle loan assistance relief product or service, and containing statements or representations prohibited by Section I of this Order, including, but not limited to carloanmod.com, hopeforcarowners.com, hope4carowners.com, hope4carowners.org, and avoidrepo.org, cannot be accessed by the public;

B. Prevent the destruction or erasure of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any motor vehicle loan assistance relief product or service, including, but not limited to carloanmod.com, hopeforcarowners.com, hope4carowners.com, hope4carowners.org, and avoidrepo.org by

preserving such website in the format in which they are maintained currently; and

C. Immediately notify in writing counsel for the FTC of any other Internet website operated or controlled by any Defendant not listed in Section III.A or B above.

**SUSPENSION OF INTERNET DOMAIN NAME REGISTRATIONS**

**IV. IT IS FURTHER ORDERED** that, pending determination of the FTC's request for a preliminary injunction, any domain name registrar shall suspend the registration of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any motor vehicle loan assistance relief product or service, and containing statements or representations prohibited by Section I of this Order, including, but not limited to carloanmod.com, hopeforcarowners.com, hope4carowners.com, hope4carowners.org, and avoidrepo.org, and provide immediate notice to counsel for the FTC of any other Internet domain names registered by Defendants or their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendants who receive actual notice of this Order by personal service or otherwise.

**PROHIBITION ON RELEASE OF CUSTOMER INFORMATION OR CUSTOMER LISTS**

**V. IT IS FURTHER ORDERED** that Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division,

or other device, are temporarily restrained and enjoined from disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), of any person which any Defendant obtained prior to entry of this Order in connection with any vehicle loan assistance relief product or service; *provided, however*, that Defendants may disclose such information to a law enforcement agency or as required by law, regulation, or court order.

**PRESERVATION OF RECORDS**

**VI. IT IS FURTHER ORDERED** that Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby temporarily restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents that relate to the business practices, or business or personal finances, of any Defendant.

**EXPEDITED DISCOVERY**

**VII. IT IS FURTHER ORDERED** that, Plaintiff may conduct expedited discovery in advance of the pending hearing on its request for preliminary injunction. Such discovery shall be limited to identifying possible additional defendants, locating documents

pertaining to defendants' businesses, and locating defendants, should they attempt to evade service.

**PRELIMINARY INJUNCTION HEARING**

**VIII. IT IS FURTHER ORDERED** that, a preliminary injunction hearing shall be scheduled on April 16, 2012, at 11:00 a.m. Any opposition shall be filed no later than 4:00 p.m. on April 9, 2012; any reply shall be filed no later than noon on April 13, 2012.

**SERVICE OF THIS ORDER**

**IX. IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile transmission, personal or overnight delivery, or U.S. Express Mail, by agents and employees of the FTC or any state or federal law enforcement agency or by private process server, on Defendants or any other person or entity that may be subject to any provision of this Order.

Dated: April 4, 2012

GARLAND E. BURRELL, JR.
United States District Judge