IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

        Plaintiff,

    vs.

HOPE FOR CAR OWNERS, LLC; PATRICK FREEMAN,

        Defendants.

                                        /

No. 2:12-cv-778-GEB-EFB

<u>FINDINGS AND RECOMMENDATIONS</u>

      Plaintiff Federal Trade Commission ("FTC") moves for default judgment against defendant Hope for Car Owners, LLC ("HCO"). Dckt. No. 41. For the reasons stated herein, the court recommends that the FTC's motion for default judgment be granted.

I.    <u>BACKGROUND</u>

      The FTC commenced this civil action on March 27, 2012, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), to obtain preliminary and permanent injunctive and other equitable relief based on defendants' alleged violations of Section 5 of the FTC Act, 15 U.S.C. § 45, in connection with the marketing and sale of motor vehicle loan assistance relief services, Dckt. No. 1. On April 4, 2012, the court issued a temporary restraining order, Dckt. No. 17. Then, on April 16, 2012, the court approved a stipulated preliminary injunction against defendant Patrick Freeman and referred the action to the undersigned pursuant to Local Rule

1

302(c)(21) because defendants were proceeding without counsel. Dckt. No. 22 at 11. The court warned HCO that it may not appear in this action without counsel, Dckt. No. 17 at 2; E.D. Cal. L.R. 183(a) ("A corporation or other entity may appear only by an attorney."); *United States v. High Country Broad Co.*, 3 F.3d 1244, 1245 (9th Cir. 2010) ("A corporation may appear in federal court only through licensed counsel.").

The FTC then filed a request that the undersigned issue a preliminary injunction against HCO, arguing that HCO had been properly served but had not appeared or opposed the FTC's request for relief. Dckt. No. 23 at 1. However, rather than immediately granting the FTC's requested preliminary injunction, HCO was given an opportunity to obtain counsel and to file an opposition to the requested injunction. Dckt. No. 24. HCO was warned that a failure "to obtain counsel and/or to file an opposition to the motion for a preliminary injunction may result in the granting of that motion and/or a recommendation that HCO be held in default." *Id.* at 3.

Because HCO neither obtained counsel nor filed an opposition or a statement of non-opposition to the FTC's motion for a preliminary injunction, the FTC filed a request for entry of HCO's default and a brief explaining that once the FTC conducted limited discovery in order to establish the amount of consumer injury caused by HCO, the FTC would file a motion for default judgment against HCO. Dckt. Nos. 26, 27. The FTC also requested that its motion for a preliminary injunction be granted. Dckt. No. 26 at 2. The clerk entered HCO's default on June 5, 2012. Dckt. No. 28.

Accordingly, on June 7, 2012, the undersigned recommended that a preliminary injunction be entered against HCO. Dckt. No. 29. On July 21, 2012, the district judge adopted those findings and recommendation and granted the FTC's motion for a preliminary injunction. Dckt. Nos. 30, 36.

Then, on July 31, 2012, the FTC filed a motion for default judgment against HCO. Dckt. No. 31. However, the court denied that motion without prejudice because the other defendant, Patrick Freeman, was not in default and the FTC was in the process of finalizing a settlement

with that defendant. Dckt. No. 38. The FTC and Freeman have since finalized the settlement, and on November 30, 2012, the assigned district judge signed a stipulated final order approving the settlement and entering a permanent injunction against Freeman. Dckt. No. 40.

The FTC now moves for default judgment against HCO once again pursuant to Federal Rule of Civil Procedure 55(b).[1] Dckt. No. 41. The motion for default judgment seeks a permanent injunction and an equitable monetary judgment of $362,388.[2]

II.   DISCUSSION

A.   Standards

It is within the sound discretion of the district court to grant or deny an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

////

---

[1] It appears HCO was likely aware of the default judgment motion since the motion was mail served on defendant Freeman and Freeman's address of record is the same as the address of record for HCO. Nonetheless, because HCO has not appeared in this action (the opposition filed by Freeman purportedly on HCO's behalf was stricken because Freeman could not represent HCO), the FTC was not required to provide HCO notice of the default judgment motion under Federal Rule of Civil Procedure 55(b)(2).

[2] The FTC seeks the same amount of judgment as entered in the settlement with defendant Freeman.

As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted). However, although well-pleaded allegations in the complaint are admitted by defendant's failure to respond, "necessary facts *not* contained in the pleadings, and claims which are *legally insufficient*, are *not* established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

B.   Entitlement to Default Judgment

Here, the court finds that the majority of the *Eitel* factors weigh in favor of granting the FTC's motion for default judgment.

1. Possibility of Prejudice to the FTC

The first *Eitel* factor considers whether the FTC would suffer prejudice if default judgment is not entered, and such potential prejudice to the FTC militates in favor of entering default judgment. *See PepsiCo, Inc*., 238 F. Supp. 2d at 1177. Here, HCO has not filed an answer or otherwise defended the action, has not obtained counsel as ordered, and has not responded to the motion for preliminary injunction, the request for entry of default, or the entry of default. In light of HCO's failure to participate in the action, absent entry of default judgment, the FTC would be without another recourse for recovery against HCO. *See FTC v. 1263523 Ontario, Inc*., 205 F. Supp. 2d 205, 208-09 (S.D.N.Y. 2002) (finding that denial of motion for default judgment would be "unfairly prejudicial" to the FTC when the defendant failed to respond to complaint or default judgment motion, make an appearance, or provide any explanation for failure to defend). Accordingly, the first *Eitel* factor favors the entry of default judgment.

2/3. Merits of FTC's Substantive Claim/Sufficiency of the Complaint

The second and third factors also favor the entry of default judgment. As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to the damages. *TeleVideo Systems, Inc.*, 826 F.2d at 917-18. Here, the

4

FTC's complaint and evidence in support of its default judgment motion establish that the FTC is entitled to the default judgment it seeks.

FTC's complaint alleges that HCO engaged in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45 by: (1) representing, falsely or without substantiation, that defendants generally would obtain for consumers a modification of the terms of consumers' motor vehicle loans that would make consumers' monthly payments substantially more affordable, and (2) misrepresenting that defendants would give consumers refunds if they failed to obtain a loan modification. Compl., Dckt. No. 1. The complaint also alleges that the activities of HCO are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44. *Id.* ¶ 4.

Section 5(a) of the FTC Act prohibits, *inter alia,* "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and the FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of that provision, or any other provisions in the FTC Act, and to secure such equitable relief as may be appropriate in each case, including disgorgement. 15 U.S.C. §§ 45(a), 53(b). An act or practice is deceptive under Section 5(a) if it involves a material representation or omission that is likely to mislead consumers, acting reasonably under the circumstances. *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009). A misrepresentation is material if it involves facts that a reasonable person would consider important in choosing a course of action. *See FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006).

The complaint alleges that "[i]n numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of vehicle loan assistance relief services, Defendants have represented, directly or indirectly, expressly or by implication, that they generally will obtain for consumers a renegotiation, settlement, modification, or other alteration of the terms of consumers' vehicle loans that will make consumers' vehicle loan payments substantially more affordable," even though that material representation "is false or

was not substantiated at the time the representation was made." Compl. ¶¶ 25-26. The complaint also alleges that "Defendants have represented, expressly or by implication, that Defendants will give refunds to consumers if Defendants fail to obtain for consumers a renegotiation, settlement, modification, or other alteration of the terms of consumers' vehicle loans that will make consumers' vehicle loan payments substantially more affordable," when "[i]n truth and in fact, in numerous instances, Defendants do not give refunds to consumers when Defendants fail to obtain for consumers a renegotiation, settlement, modification, or other alteration of the terms of consumers' vehicle loans that will make consumers' vehicle loan payments substantially more affordable." *Id.* ¶¶ 28-29. The complaint also specifically alleges that both such misrepresentations are "false and misleading and constitute[] a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a)." *Id.* ¶¶ 27, 30.

When assuming the truth of those allegations, the FTC has sufficiently stated a claim against HCO for violations of Section 5(a) of the FTC Act.[3] Accordingly, the second and third *Eitel* factors favor the entry of default judgment.

### 4. Sum of Money at Stake

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, the FTC seeks an equitable monetary judgment against HCO in the amount of $362,388. Although the FTC argues that figure represents the amount that HCO fraudulently took from consumers and is therefore entirely commensurate with the gravity of HCO's violations, because the sum of money at stake is significant, the fourth factor weighs arguably

---

[3] The allegations are also supported by the sworn declarations and other evidence submitted with the FTC's motion for temporary restraining order. That evidence, including consumer declarations and a declaration from the FTC investigator, Dckt. Nos. 6-2 through 6-10, previously led the court to conclude that FTC is likely to prevail on the merits of this case against HCO. Dckt. No. 17 at 5; Dckt. No. 29 at 3.

against the entry of default judgment.

### 5. Possibility of a Dispute Concerning the Material Facts

The fifth factor, however, weighs in favor of granting the FTC's motion for default judgment. The facts of this case are relatively straightforward, and the FTC has provided the court with well-pleaded allegations supporting its claims. Here, the court may assume the truth of well-pleaded facts in the complaint following the clerk's entry of default and, thus, there is a very low likelihood that any genuine issue of material fact exists.[4] *See, e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal.2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc.*, 219 F.R.D. at 500; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

### 6. Whether the Default Was Due to Excusable Neglect

The sixth factor also weighs in the FTC's favor. HCO did not file an answer or otherwise defend this action, did not obtain counsel as ordered, and did not respond to the motion for preliminary injunction, the request for entry of default, or the entry of default. Thus, the record suggests that HCO has chosen not to defend itself in this action, and not that the default resulted from any excusable neglect. *See Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants were properly served with the complaint, the notice of entry of default, and the papers in support of the motion for default judgment); *United States v. High Country Broad. Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (holding that it is "perfectly appropriate" for a district court to enter a default judgment against a corporate defendant that fails to retain counsel).

////

---

[4] Further, as noted above, the FTC and defendant Freeman have already reached a final settlement and the court has already issued an order approving that settlement (for the same amount sought against HCO herein) and issued a permanent injunction against Freeman.

7

### 7. Policy Favoring Decisions on the Merits

Finally, the seventh *Eitel* factor weighs against granting the motion for default judgment. The strong policy underlying the Federal Rules of Civil Procedure favors decisions on the merits. *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc*., 238 F. Supp. 2d at 1177; *see Craigslist, Inc. v. Naturemarket, Inc*., 2010 WL 807446, at *16 (N.D. Cal. Mar. 5, 2010); *ACS Recovery Servs., Inc. v. Kaplan*, 2010 WL 144816, at *7 (N.D. Cal. Jan.11, 2010); *Hartung v. J.D. Byrider, Inc*., 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009). Accordingly, although there is a strong policy favoring decisions on the merits, that policy does not by itself preclude entry of default judgment.

Therefore, because the majority of the *Eitel* factors weigh in favor of granting default judgment to FTC, the undersigned will recommend granting FTC's motion.

### C. Scope of Final Order/Judgment

As noted above, the FTC seeks a permanent injunction and an equitable monetary judgment of $362,388, which is the amount of consumer injury caused by HCO.

This court has the authority to grant permanent relief pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), which states that "in proper cases the FTC may seek, and, after proper proof, the court may issue, a permanent injunction" against violations of "any provision of law enforced by the Federal Trade Commission." 15 U.S.C. § 53(b); *Pantron I Corp*., 33 F.3d at 1102. This provision gives the federal courts broad authority to fashion appropriate remedies for violations of the FTC Act, *Pantron I Corp*., 33 F.3d at 1102, including "any ancillary relief necessary to accomplish complete justice." *FTC v. H.N. Singer, Inc*., 668 F.2d 1107, 1113 (9th Cir. 1982). In addition to injunctive relief, Section 13(b) permits a panoply of equitable remedies, including monetary equitable relief in the form of restitution and disgorgement, as well as miscellaneous reliefs such as asset freezing, accounting, and discovery to aid in

providing redress to injured consumers. *Pantron I Corp.*, 33 F.3d at 1103 & n.34.

### 1. Permanent Injunction Provisions

Section 13(b) of the FTC Act expressly authorizes courts to grant a permanent injunction against violations of any provisions of law enforced by the FTC. 15 U.S.C. § 53(b); *H.N. Singer,* 668 F.2d at 1113. A permanent injunction is justified when there is a "cognizable danger of recurrent violation, or some reasonable likelihood of future violations." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).

A permanent injunction is warranted here. According to the allegations in the complaint, which are taken as true, HCO has been engaged in deceptive behavior since at least March 2009. Further, given its apparent reckless disregard for judicial proceedings, there is a "cognizable danger" that it will continue to violate the law absent injunctive relief. Therefore, a nationwide injunction against HCO is appropriate and necessary to protect the public from further violations of the FTC Act.[5] Specifically, as discussed in detail in the FTC's motion for default judgment, because HCO has demonstrated an inability to market loan modifications clauses in a nondeceptive fashion, HCO should be permanently banned from marketing or selling motor vehicle loan assistance relief products or services or other secured or unsecured loan modification services, or assisting others who do. It is also appropriate to prohibit HCO from engaging in certain business activities relating to the marketing and sale of financial related products or services or any other products or services which would be unlawful under Section 5 of the FTC Act, including making certain misrepresentations in connection with the marketing of other financial related products or services or any other product or service, and requiring HCO to substantiate all benefit, performance, or efficacy claims. Finally, the monitoring provisions set forth in the FTC's proposed permanent injunction – an order distribution requirement (Section VII); a compliance reporting provision (Section VIII); record-keeping provisions (Section IX);

---

[5] The proposed injunctive relief is identical to that contained in the settlement with defendant Freeman.

and compliance monitoring (Section X) – are all appropriate under the circumstances here.

### 2. Monetary Judgment

As noted above, Section 13(b) permits a panoply of equitable remedies, including monetary equitable relief in the form of restitution and disgorgement. *Pantron I Corp.*, 33 F.3d at 1103 & n.34. The proper measure of consumer redress is the total amount paid by consumers to purchase goods or services, less refunds returned to consumers. *FTC v. Gill*, 265 F.3d 944, 958 (9th Cir. 2001); *Stefanchik*, 559 F.3d at 931. Moreover, because the purpose of the FTC Act is to protect consumers from economic injury, the measure of consumer redress is the full amount lost to consumers, i.e., to restore consumers to their status quo, not to restore defendants' profits. *Stefanchik*, 559 F.3d at 931. Defendants are also liable for the entire amount spent by consumers regardless of the "value of the thing sold." *FTC v. Figgie Int'l*, 994 F.2d 595, 606 (9th Cir. 1993). Thus, even if a small number of customers had received some reduction in monthly payment, it would be irrelevant to the redress calculation. *McGregor v. Chierico*, 206 F.3d 1378, 1388-89 (11th Cir. 2000) (upholding award of gross sales as consumer redress, finding that even if product purchased is useful and competitively priced, central question is "whether seller's misrepresentations tainted the customer's purchasing decisions"). Finally, the FTC need not prove that each purchasing consumer relied on the misrepresentations about HCO's services. *Stefanchik*, 559 F. 3d at 929 n.12; *Figgie Int'l*, 994 F.2d at 605-06 ("It is well established with regard to Section 13 of the FTC Act . . . that proof of individual reliance by each purchasing customer is not needed. . . . Requiring proof of subjective reliance by each individual consumer would thwart effective prosecutions of large consumer redress actions and frustrate the statutory goals of the section.").

////

////

////

////

Here, the proposed default judgment includes a monetary judgment against HCO in the amount of $362,388.[6] This figure was derived from the records of financial institutions, which the FTC obtained by compulsory process from the financial institutions where HCO maintained its accounts. Decl. of Amanda Savitt in Supp. of Mot. for TRO, Dckt. No. 6-2, ¶¶ 13-14; Decl. of Amanda Savitt in Supp. of July 31, 2012 Mot. for Def. J., Dckt. No. 31-2, ¶¶ 3-4.[6] The amount was calculated by adding the consumer payment deposits and subtracting the payments that were refunded or returned, and those that were charged back to those accounts. *Id.* The FTC calculates that during the period between March 2009 and October 2011, the time period for which the FTC has financial records, HCO took in gross deposits of $370,378. Decl. of Amanda Savitt in Supp. of Mot. for TRO, Dckt. No. 6-2, ¶ 14; Decl. of Amanda Savitt in Supp. of July 31, 2012 Mot. for Def. J., Dckt. No. 31-2, ¶ 4. During the same time period, the FTC calculates that consumers received back $7,990 in refunds, returns, or charge backs. Decl. of Amanda Savitt in Supp. of July 31, 2012 Mot. for Def. J., Dckt. No. 31-2, ¶ 5. Thus, the total amount of consumer injury caused by HCO is $362,388. *Id.* ¶ 6; *Stefanchik*, 559 F.3d at 931-32 (affirming award representing defendant's net sales); *FTC v. Medlab, Inc.*, 615 F. Supp. 2d 1068, 1083 (N.D. Cal. 2009) (correct measure of equitable relief is gross sales minus consumer refunds). Accordingly, it is appropriate for the court to enter judgment against HCO in the amount of $362,388.[6]

---

[6] As noted above, the proposed monetary judgment is identical to that contained in the settlement with defendant Freeman.

[6] The earlier motion for default judgment, including the declaration of Amanda Savitt, was served on Freeman at the same address as that of HCO. Again, however, because HCO has not appeared in this action, HCO was not entitled to notice of either default judgment motion.

[6] Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir.1981) (no hearing necessary when documents show judgment amount based on a definite figure). A hearing on the issue of damages is not required as long as the Court finds there is a basis for the

### III. CONCLUSION

Based on the foregoing findings, IT IS HEREBY RECOMMENDED that:

1. The FTC's motion for default judgment, Dckt. No. 41, be granted;

2. The district judge sign the FTC's proposed default judgment and permanent injunction against HCO, Dckt. No. 41-2; and

3. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 24, 2013.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

damages specified. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). Affidavits or other documentary evidence is sufficient to evaluate the fairness of the amount requested. *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993).

12